Steve SALGADO, Petitioner—
Appellant,

v.

M. YARBOROUGH, Warden; et
al., Respondents—Appellees.

No. 06–56224.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 10, 2008.

Filed Feb. 25, 2008.

Richard A. Levy, Esq., Torrance, CA,
for Petitioner–Appellant.

Steve Salgado, Lancaster, CA, pro se.

Lise S. Jacobson, Esq., Office of the California Attorney General, San Diego, CA, for Respondents–Appellees.

Before: FARRIS and M. SMITH, Circuit Judges, and HOLLAND *, District Judge.

MEMORANDUM **

The facts and procedural history of this case are known to the parties, and we do not repeat them here.

Pursuant to 28 U.S.C. § 2254, Petitioner Steve Salgado challenges the constitutionality of his conviction for two counts of first-degree murder, among other charges. We affirm the denial of the petition.

I.

The writ of habeas corpus "shall not be granted" on behalf of a person in state custody unless the state's adjudication of his claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Salgado contends that the habeas petition should be granted because the state trial court's omission of CALJIC No. 8.31 from the jury instructions leaves open the possibility that the jury erroneously convicted him of first-degree murder on a finding of implied malice rather than express malice. The argument is unpersuasive.

Habeas relief is warranted on the basis of a flawed jury instruction if the flaw amounted to constitutional error and caused prejudice. *Calderon v. Coleman,* 525 U.S. 141, 145–47, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998); *see also Pulido v. Chrones,* 487 F.3d 669, 673 n. 3 (9th Cir. 2007). A jury instruction in a criminal trial violates due process, and thus amounts to constitutional error, if it relieves the State of its burden of proving beyond a reasonable doubt each element of the charged offense. *Carella v. California,* 491 U.S. 263, 265, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989). "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction" will have such an effect, however. *Middleton v. McNeil,* 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004). Where it is unclear whether an instruction relieves the state of its burden of proof because a challenged instruction is ambiguous, constitutional error exists only if " 'there is a reasonable likelihood that the jury has applied the ... instruction in a way' " that would lead to conviction without proof beyond a reasonable doubt for each element of the charged offense. *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)).

The California Court of Appeal's decision was consistent with *Estelle.* For several reasons, there is no "reasonable likelihood" that the omission of CALJIC No. 8.31 led the jury to convict Salgado for first-degree murder on a theory of implied

---

* The Honorable H. Russel Holland, Senior United States District Judge for the District of Alaska, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

malice. First, at trial the State presented abundant evidence that the shootings were deliberate and manifestly intended to kill. Arteaga was shot in the face multiple times from several inches away shortly after a gang confrontation of which he was a part. The other shootings occurred shortly after Southsiders confronted Robert Molina, Rene Fernandez, Jose Martinez and Anthony Quiros. The perpetrator chased these individuals over a substantial distance and repeatedly shot at them as they tried to get away. Faced with such evidence, a reasonable jury would likely find beyond a reasonable doubt that the shootings had been committed with express malice aforethought.

Second, implied malice was never argued by either party. The District Attorney argued only that the shootings of Arteaga and Fernandez constituted premeditated acts manifestly intended to kill. The District Attorney even advised the jury during closing arguments to disregard the instruction defining implied malice because Salgado's liability hinged on whether he acted with express malice. Salgado never disputed this position; he argued only that the shootings were committed by someone else. That the State's evidence demonstrated express malice beyond a reasonable doubt was therefore never in question.

Finally, the jury instructions never affirmatively suggested that implied malice is a basis for a first-degree murder conviction. The only reference to implied malice occurs in CALJIC No. 8.11, which generally defines malice aforethought. Unlike CALJIC No. 8.20 and certain other instructions, CALJIC No. 8.11 does not purport to describe an independent form of criminal liability. The trial court, moreover, instructed the jury to disregard any instruction on a point of law found inapplicable in light of their determination of the

facts. Given the evidence and arguments presented at trial, it was not unreasonable to conclude that reasonable jurors would construe that instruction as applying to CALJIC No. 8.11's definition of implied malice.

Salgado cites to *Suniga v. Bunnell,* 998 F.2d 664 (9th Cir.1993), *Lara v. Ryan,* 455 F.3d 1080 (9th Cir.2006), and *Pulido,* 487 F.3d 669, for the proposition that a new trial is required because we cannot be absolutely certain that the jury did not rely on an invalid theory of liability for first-degree murder. These cases are distinguishable. First, none of them applied *Estelle* to determine whether an instruction amounted to constitutional error. Rather, they evaluated whether admitted constitutional errors required habeas relief as structural defects. Because *Estelle* establishes the absence of constitutional error in Salgado's case, we do not reach the question of whether the error amounts to a structural defect. Second, even if the cited cases had each applied *Estelle,* the instructional errors they involved were more likely to mislead a jury.

## II.

■ Salgado next argues that the State violated his right to due process by denying him a full evidentiary hearing with live testimony concerning allegations of juror misconduct. We reject this argument. "A court confronted with a colorable claim of juror bias must undertake an investigation" that is "reasonably calculated to resolve doubts raised about the juror's impartiality." *Dyer v. Calderon,* 151 F.3d 970, 974–75 (9th Cir.1998) (interpreting *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), and *Smith v. Phillips,* 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)). The Court of Appeal reasonably applied *Remmer* and *Phillips* in finding that the trial court's investiga-

tion was sufficient. The trial court considered affidavits from each of the jurors and the arguments presented by both parties prior to denying the motion. The court also determined on the basis of all of the evidence that Juror No. 5's allegations lacked credibility and therefore did not warrant further inquiry. Given the extent of the documentary record, it was not unreasonable to conclude that live testimony was unnecessary. *See United States v. Angulo,* 4 F.3d 843, 847 (9th Cir.1993) (evidentiary hearing is not necessary in every instance).

## III.

Salgado also argues that the trial court violated his right to due process by denying his motion for a new trial based on juror misconduct. We again find the argument unpersuasive. The Due Process Clause of the Fourteenth Amendment entitles a state criminal defendant to an impartial jury. *Morgan v. Illinois,* 504 U.S. 719, 726, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992). However, the State reasonably found that no misconduct occurred. Juror No. 5's correspondence with Salgado, combined with the absence of corroborating testimony from other jurors, suggested that Juror No. 5's allegations lacked credibility.

AFFIRMED.